UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| COYLE NISSAN, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 4:18-cv-75 |
| NISSAN NORTH AMERICA, INC., | ) ) ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### I. Nature of Action.

1.  Plaintiff, Coyle Nissan, LLC ("Coyle") brings this action against Nissan North America, Inc. ("Nissan") alleging a breach of contract, violation of Indiana Statutes governing the relationship between Nissan and Coyle, and violation of various federal statutes as set forth herein. In support thereof Coyle alleges and states as follows:

### II. Parties.

2.  Coyle is an Indiana limited liability company with its principal place of business located at 1400 Leisure Way, Clarksville, Indiana 47129 and at all times relevant to this action conducted business and maintained offices within the geographical boundaries of the Southern District of Indiana.

3.  Nissan is a distributor of Nissan new motor vehicles and automotive products within the meaning of the law of the State of Indiana and at all times relevant to this action maintained offices at One Nissan Way, Franklin, Tennessee 37067. At all such times as set forth herein Nissan was a "Distributor" licensed as such pursuant to the laws of the State of Indiana.

3416040_1

### III. Jurisdiction and Venue.

4. The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and is between citizens of different states such that this court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

5. All events, transactions, and actions relevant to this action have occurred within the geographical venue of the Southern District of Indiana and venue is proper with this Court pursuant to 28 U.S.C. §1391.

### IV. Factual Allegations Common to All Counts.

6. On or about July 11, 2012, Coyle consummated an Asset Purchase Agreement with Bales Motor Company, an Indiana corporation, for the acquisition of certain new automobile dealer assets including conditional rights to become an established Nissan dealer, subject to the approval of Nissan.

7. Nissan approval was obtained on the above referenced date and Coyle and Nissan entered into a Dealer Term Sales & Service Agreement ("Franchise Agreement"). A true and accurate copy of the Franchise Agreement is attached hereto and labeled as **Exhibit "A"**.

8. Pursuant to the Franchise Agreement, Coyle was granted the right to conduct its Nissan sales, service, parts, and body repair business in a temporary location at 1400 Leisure Way, Clarksville, Indiana until permanent facilities could be established.

9. Pursuant to Article Twelfth of the Franchise Agreement, Coyle was granted use of its approved temporary facility until no later than June 30, 2015.

10. Article Twelfth established a time table for identification of a permanent site and construction of facilities in accordance with Article Twelfth (B). Paragraph B requires Coyle to identify a property approvable by Nissan on or before September 1, 2013.

**11.** An approvable site is defined under the Franchise Agreement as one which "so as to provide exclusive, separate and distinct (stand-alone) Nissan dealership facilities of a size, appearance and layout needing Seller (Nissan's) approval in accordance with the guidelines established by Seller (Nissan), all in accordance with final architectural plans to be submitted to Seller (Nissan) for approval (the "New Dealership Facilities"). Seller (Nissan) has developed facility guidelines for the size, appearance and lay out of Nissan Dealership Facilities overall (herein referred to as the "Nissan Retail Environmental Design Initiative" or "NREDI"). Various other provisions of Paragraph B extended the time for completion of the facility to June 30th, 2015. The requirement of approvable property relates to one which meets size requirements established by Nissan and allows for the construction of an NREDI compliant facility.

**12.** On or about September 17, 2013, Coyle identified a parcel of real estate of sufficient size so as to allow for construction of a complete NREDI facility consistent with the guidelines established by Nissan in the Term Franchise Agreement. Such site was on a parcel located south of the intersection of Broadway and Veteran's Parkway; said site being south of a site occupied at the time by Coyle Chevrolet, a separate entity but with some similar minority ownership.

**13.** Veteran's Parkway is the most highly traveled local highway in the Clarksville/Jeffersonville, Indiana area and is one block from a major interchange with Interstate 65, the major interstate artery running between Louisville, Kentucky through the Clarksville/Jeffersonville area and then north to Indianapolis, Indiana. The proposed location was of ample size with significant road and visibility from Interstate 65 and had all requirements to appropriately house an NREDI facility.

14. Prior to submission of Coyle's formal site proposal on September 17, 2013, Coyle had discussed with Nissan its potential proposed site which was verbally rejected Coyle then obtained an option on undeveloped property east of Interstate 65 which Nissan also rejected. Nissan indicated that it preferred a location to the west of Interstate 65.

15. Coyle then, at its own expense, commissioned a site analysis performed by Anderson Economic Group ("Anderson Report") dated August 19, 2013, which analyzed three (3) prospective sites potentially identified by both Coyle and Nissan. A true and accurate copy of the Anderson Report concluding that Coyle's proposed site ("Site One") located south of the intersection of Broadway and Veteran's Parkway, adjacent to Coyle Chevrolet, would be a preferred site is attached hereto and labeled as **Exhibit "B"**.

16. Coyle submitted its original site proposal at Site One to Nissan on September 17, 2013. A true and accurate copy of Coyle's September 17, 2013 site proposal is attached hereto and labeled as **Exhibit "C".**

17. Nissan arbitrarily and without good business reason rejected Coyle's proposal by correspondence dated November 27, 2013. A true and accurate copy of Nissan's November 27, 2013 correspondence is attached hereto and labeled as **Exhibit "D"**.

18. Nissan contended that it had performed its own market analysis by an appropriately qualified economic analysis firm, but Nissan refused to provide Coyle with copies of the analysis after Coyle's numerous requests to provide same.

19. Nissan again, by correspondence dated December 15, 2014, arbitrarily and without good business reason, denied a second request to approve Coyle's Site One proposed site. A true and accurate copy of Nissan' December 15, 2014, correspondence is attached hereto and labeled as **Exhibit "E"**.

20. Subsequent to that time Coyle and Nissan searched the market and could not find appropriate property that would accommodate an NREDI facility that was not cost prohibitive or where the facility could be built in a reasonable fashion, e.g., without double decking parking or bifurcating buildings or the like.

21. Subsequent to these dates Nissan, on or around April 20, 2017, approved Coyle's original proposed Site One submitted on September 17, 2013, which Nissan had twice rejected. A true and accurate copy of Nissan's April 20, 2017, correspondence is attached hereto and labeled as **Exhibit "F"**.

22. As a result of Nissan's arbitrary and unjustified action in 2013, Coyle has incurred significant damages including, but not limited to, lost sales incentives per Nissan's sales incentive programs, increased construction costs, loss of sales, and diminution of value of its dealership.

### V. Causes of Action.

#### COUNT I: BREACH OF CONTRACT

23. Coyle incorporates, by reference herein, Paragraphs numbered 1 through 22 of its Complaint as if the same were set forth at length herein.

24. Nissan, by denying Coyle's original September 17, 2013, proposal, arbitrarily and without reasonable business justification, and then subsequently approving the site on April 20, 2017, breached Article Twelfth of the Franchise Agreement.

25. As a result of Nissan's breach of the Franchise Agreement Coyle has suffered actual and consequential damages.

## COUNT II:  FAILURE TO BARGAIN IN GOOD FAITH AND DEAL FAIRLY

26. Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

27. Indiana's Uniform Commercial Code, more particularly Section I.C. §26-1-1-203, imposes an implied duty of parties to a contract to bargain in good faith and fair dealing.  The actions of Nissan set forth hereinabove breached that duty.

28. As a result of Nissan's breach Coyle has suffered actual and consequential damages.

## COUNT III:  VIOLATION OF CALIFORNIA LAW

29. Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

30. The Franchise Agreement establishes California law as a choice of law with regard to general interpretation as to nonspecific provisions afforded automobile dealerships under Indiana law.

31. The California common law imposes in every contract a covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefit of the contract. *Powerhouse Motor Sports Group, Inc. v. Yamaha Motor Corporation* (Court of Appeal, Second Dist., Division 6, November 26, 2013), 221 Cal. App.4th 867, 164 Cal. Rptr. 3D 811.

32. California's covenant of good faith and fair dealing does not impose duties beyond the express terms of the contract, but, when a contract gives one party discretionary power affecting the rights of the other (i.e., approving dealership location), that party must exercise its discretion and good faith and in accordance with fair dealing. (*Id.*).

**33.** Nissan breached the covenant of good faith by denying Coyle's proposed dealership Site One on Veterans Parkway in 2013 and 2014. (See **Exhibits "D" and "E"**).

**34.** The lack of reasonableness of Nissan's 2013 and 2014 decisions is exemplified by its eventual approval of the exact same location on April 20, 2017 (See **Exhibit "F"**).

## COUNT IV: BREACH OF FIDUCIARY DUTY

**35.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**36.** By its actions Nissan has breached its fiduciary duty owed to Coyle. Automotive Franchise Agreements have been determined by the courts to be contracts of adhesion referring to instances where one of the contracting parties has an extraordinarily superior economic power vis-a-vis the other. Such contracts presume a requirement of good faith and fair dealing on Nissan's part.

**37.** Nissan's failure to approve the Site One originally proposed by Coyle on September 17, 2013, and then subsequently approving the proposed site on April 20, 2017, was a breach of the heightened duty of care owed to Coyle.

**38.** As a result of Nissan's breach of fiduciary duty Coyle has incurred significant, actual and consequential damages.

## COUNT V: VIOLATION OF IC 23-2-2.7-2(1)(iv)

**39.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**40.** The actions of Nissan violate I.C.§ 23-2-2.7-2(1)(iv) and constitute a prejudicial action by a franchisor to the detriment of the franchisee.

**41.** As a result of Nissan's violation of the aforesaid statute, Coyle has suffered actual and consequential damages and has suffered a diminution of the value of Coyle's franchised business operation.

### COUNT VI:  VIOLATION OF IC 23-2-2.7-2(5)

**42.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**43.** The arbitrary actions by Nissan in not approving the Site One proposed in Coyle's 2013 and 2014 requests, and then subsequently approving the same site on April 20, 2017, has resulted in Coyle being denied participation in various economic programs sponsored by Nissan that have been available to other similarly situated dealerships but have been denied to Coyle.

**44.** The actions of Nissan constitute a violation of I.C. §23-2-2.7-2(5) by discriminating unfairly among franchisees similarly situated.

**45.** As a result of Nissan's violation of the aforesaid statutory section, Coyle has suffered actual and consequential damages.

### COUNT VII: VIOLATION OF IC 9-32-13-20

**46.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**47.** Nissan has engaged committed an unfair practice in terms of its dealings with Coyle in violation of I.C. §9-32-13-20 which makes it an unfair practice for Nissan to engage in deceptive acts or practices.

**48.** As a result of Nissan's violation of the aforesaid statutory section, Coyle has suffered actual and consequential damages.

## COUNT VIII: VIOLATION OF IC 9-32-13-8

**49.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**50.** Nissan's conduct is in direct violation of I.C. §23-2-2.7 and thus in violation of IC 9-32-13-8 which prohibits Nissan from engaging in deceptive acts or practices.

**51.** As a result of the violation of the aforesaid statutory section, Coyle has suffered actual and consequential damages.

## COUNT XV: VIOLATION OF IC 9-32-13-13

**52.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**53.** The actions of Nissan violate the provisions of I.C. §9-32-13-13 as Nissan's actions amount to an attempt to prevent Coyle from receiving a fair and reasonable compensation to the value of its franchised business is a growing concern. The actions of Nissan have significantly diminished the value of Coyle's Nissan franchised business enterprise.

**54.** As a result of the violation of the aforesaid statutory section, Coyle has suffered actual and consequential damages.

## COUNT X: VIOLATION OF IC 9-32-13-27

**55.** Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

**56.** The actions of Nissan set forth herein constitute a constructive termination of Coyle's Nissan franchise without good cause in violation of I.C. §9-32-13-27.

**57.** Coyle has suffered actual and consequential damages as a result of Nissan's actions.

## COUNT XI: VIOLATION OF U.S.C. §1221 *et seq.*

58. Coyle incorporates, by reference herein, Paragraphs numbered 1 through 22 of its Complaint as if the same were set forth at length herein.

59. The Automobile Dealers Days in Court Act ("ADDCA"), 15 U.S.C. §1221 *et seq.*, provides a dealer with a federal cause of action against an automobile manufacturer who has failed to act in good faith regarding a franchise. Coyle is an "automobile dealer" within the meaning of U.S.C. § 1221(c) of the ADDCA.

60. Nissan is an "automobile manufacturer" within the meaning of U.S.C. § 1221(a) of the ADDCA.

61. The Franchise Agreement between Nissan and Coyle is a "franchise" within the meaning of U.S.C. § 1221(b) of the ADDCA.

62. Nissan, through its coercion, intimidation, and/or threats of termination has attempted to compel Coyle to approve a permanent facility site that was not reasonable or economically feasible and did so without just cause.

63. Nissan's actions of coercion, intimidation, and/or threats included not providing a permanent Dealer Sales and Service Agreement to Coyle and the threat of termination of the temporary Term Dealer Agreement unless Coyle proposed a site within the areas Nissan preferred and identified to Coyle.

64. Nissan's conduct as set forth above violates 15 U.S.C. § 1221 *et seq.*, of the ADDCA.

65. As a result of Nissan's violation of the ADDCA, Coyle has sustained and will sustain substantial damages in amounts to be determined at trial by a jury.

## COUNT XII: VIOLATION OF ROBINSON PATMAN
## ACT 15 U.S.C. § 13(a)

66.     Coyle incorporates, by reference herein, Paragraphs numbered 1 through 22 of its Complaint as if the same were set forth at length herein.

67.     Coyle has standing to sue under the Robinson-Patman Act ("RPA"), because it has suffered an injury-in-fact and presumed injury as a result of Nissan's violation of the RPA. Among other things, upon information and belief, Coyle has lost actual sales of new Nissan motor vehicles to a competing same line-make Nissan dealer in the Louisville, Kentucky metropolitan market because it was a Preferred Dealer under an Illegal Incentive Program, which was not known to Coyle, that allowed the Preferred Dealership to provide retail customers pricing <u>below</u> Coyle's wholesale price of Nissans through Nissan's upfront cash payments and/or quarterly payments, based upon sales incentives, to the Preferred Dealership.

68.     Nissan is a new motor vehicle distributor engaged in the sale of new motor vehicles in interstate commerce through motor vehicle dealers franchise by Nissan under its nationwide dealer agreements.  Nissan has sold such motor vehicles to Coyle across state lines and has sold vehicles of the like grade and quality in contemporaneous sales to one or more Preferred Dealers in the Louisville, Kentucky metropolitan market for lower prices than those available to Coyle.

69.     Nissan's Illegal Incentive Program results in presumed and actual damages whereunder Nissan provides sales incentives which effectively and realistically reduce the purchase price of the vehicle to Nissan's Preferred Dealers, who in turn sell new Nissan motor vehicles to retail customers at substantially lower cost than Coyle can sell to the consumer.

70. Nissan covertly, unilaterally, and arbitrarily controls every aspect of qualification, if such exists, for acceptance into its Illegal Incentive Program. Nissan has covertly, arbitrarily, and illegally excluded Coyle from knowing about or participating in the Illegal Incentive Program, and will continue to do so. The Illegal Incentive Program is secret, and thus not reasonably available to Coyle. Further, there is no functional availability to Coyle to purchase new Nissan motor vehicles at the same wholesale prices paid to Nissan by the Preferred Dealerships in the Louisville, Kentucky metropolitan market.

71. Coyle is a Nissan new motor vehicle dealer and competitor on the same functional level with the Preferred Dealerships who receive price discounts under the Illegal Incentive Program. Nissan has charged Coyle significantly higher prices for similar or identical products than those charged by Nissan to the Preferred Dealerships with whom Coyle directly competes in the Louisville, Kentucky metropolitan market. Nissan's Illegal Incentive Program constitutes discriminatory pricing practices under the RPA.

72. The Preferred Dealerships, identified and unilaterally chosen by Nissan, provide no service or savings to Nissan which is not provided in like-kind by Coyle.

73. The commodity at issue (i.e., Nissan new motor vehicles) is a finished and fully consumable product. Lowering the price for such a finished commodity to a Preferred Dealer results, by definition and presumption, in loss profits to non-preferred dealers who lose the direct benefit of the lower purchase price.

74. The motor vehicles that Nissan sells across states to Coyle and to the Preferred Dealerships and to other Nissan Dealers with whom Coyle competes are of the same grade and quality. However, Coyle pays a higher price to Nissan for the same make and model of a new

Nissan motor vehicle than the Preferred Dealership in the Louisville, Kentucky metropolitan market against whom Coyle directly competes.

75. Since the implementation of the Illegal Incentive Program and the participation of a Preferred Dealership, there have been substantial sales of illegally discounted vehicles sold by the Preferred Dealerships at illegally discounted prices that, upon information and belief, resulted in direct losses of sales by Coyle and corresponding increase of sales by the Preferred Dealerships. The relevant product markets include the market for new motor vehicles manufactured and sold by Nissan to its franchise dealers and, in turn, sold by such dealers to consumers in the greater Louisville, Kentucky geographic area.

76. With respect to Coyle as a purchaser of new motor vehicles from Nissan, the relevant geographic market is an area approximately corresponding to the respective geographic definition identified by the manufacturer Nissan as the District, Region, and/or Metropolitan Market of Louisville, Kentucky that Nissan has established in their Dealer Sales & Service Agreement for the sale of new motor vehicles to its dealer body in which Coyle conducts his business operations, resides, and is measured by Nissan for sales performance.

77. For Coyle as a seller to consumers of new motor vehicles manufactured by Nissan, the relevant geographic market is the area in, around, and surrounding the Louisville, Kentucky metropolitan market in which Coyle expressly competes against the Preferred Dealerships and other same line-make Nissan dealers.

78. Nissan's Illegal Incentive Program favors Preferred Dealerships and is a direct attempt to consolidate its dealer network by economic attrition and constitutes a prohibited effect on conduct of commerce and eliminates and possibility that Nissan's substantial price discounts will be available, functionally or otherwise, to Coyle. The Illegal Incentive Program is a secret

program not available to Coyle and substantially harms Coyle because the profit margin on the sale of a new Nissan motor vehicle is very small and affects retail consumer choices in the Relevant Market Area ("RMA") that same line-make Nissan dealers are competing for sales to the public.

79. The conduct of Nissan in devising and implementing the Illegal Incentive Program violates the RPA at 15 U.S.C. §13(e) and prevents legitimate and lawful competition between the same line-make Nissan dealerships in the RMA.

80. As a direct and proximate result of Nissan's wrongful conduct, Coyle has been presumed damaged and has suffered a real and actual injury in fact. Coyle has lost sales, service, warranty repairs, profits, income, known sales program bonuses, working capital, customers, and good will as a result and cannot meet the lower prices the Preferred Dealerships can charge for a new and identical Nissan motor vehicle. Coyle has also incurred a diminution of value of its Nissan franchise because of decrease in sales volume and market share attributable to the Illegal Incentive Program to the Preferred Dealers.

## COUNT XIII: REQUEST FOR DECLARATORY JUDGMENT

81. Coyle hereby incorporates by reference all facts set forth in rhetorical Paragraphs 1 through 22 of its Complaint as if the same were set forth at length herein.

82. The actions of Nissan as stated herein entitle Coyle to a declaratory judgment that Nissan has violated various provisions of Indiana statutes applying to licensed motor vehicle franchise agreements to wit: I.C. §23-2-2.7 *et seq*. and I.C. §9-32-13 *et seq*.

83. The actions of Nissan allow Coyle to recover damages for violation of the afore cited Indiana Code sections as provided by I.C. §23-2-2.7-4.

## VI.   **REQUESTED RELIEF**

WHEREFORE, the Plaintiff, Coyle Nissan, LLC, by counsel, respectfully requests that this Court enter judgment in its favor against the Defendant, Nissan North America, Inc. on all counts alleged in this Complaint; award Coyle all damages arising out of it which are reasonably foreseeable as a result of Defendant's conduct; award attorney fees, costs for its claims and for all other just and proper relief in the premises.

Respectfully submitted,

**BOSE McKINNEY & EVANS LLP**

/s/ *Ronald C. Smith*
Ronald C. Smith (#387-49)

/s/ *Jeffrey B. Halbert*
Jeffrey B. Halbert (#22727-49)

*Attorneys for Plaintiff, Coyle Nissan, LLC*

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
Telephone:   (317) 684-5000
Facsimile:   (317) 684-5173
E-mail:   RSmith@boselaw.com
           JHalbert@boselaw.com

Christopher M. DeVito (Ohio Bar #0047118)
*(application* for *pro hac admission to be filed)*
Morganstern, MacAdams & DeVito, Co., L.P.A.
623 West Saint Clair Avenue
Cleveland, Ohio 44113-1204
Telephone:   (216) 687-1212
Facsimile:   (216) 621-2951
E-mail:   ChrisMDeVito@gmail.com

## DEMAND FOR TRIAL BY JURY

Plaintiff, Coyle Nissan, LLC, by counsel, respectfully requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

**BOSE McKINNEY & EVANS LLP**

/s/ *Ronald C. Smith*
Ronald C. Smith (#387-49)

/s/ *Jeffrey B. Halbert*
Jeffrey B. Halbert (#22727-49)

*Attorneys for Plaintiff, Coyle Nissan, LLC*

3416040_1