UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| COYLE NISSAN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00075-TWP-TAB |
| | ) | |
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S BILL OF COSTS
AND PARTIES' POST-TRIAL MOTIONS**

This matter is before the Court on Defendant Nissan North America, Inc.'s ("NNA") Bill of Costs (Filing No. 334) as well as its Motion to Amend Judgment and Renewed Motion for Judgment as a Matter of Law (Filing No. 337). Also before the Court is Plaintiff Coyle Nissan, LLC's ("Coyle") Motion to Amend Final Judgment (Filing No. 335) and Renewed Motion for Judgment as a Matter of Law (Filing No. 336). In May 2018, Coyle initiated this lawsuit against NNA to bring claims for breach of contract, breach of fiduciary duty, and other statutory and common law claims, arising out of the parties' automobile manufacturer-dealer relationship. After years of hard-fought, protracted litigation, and following a motion to dismiss, motion for summary judgment, and supplemental pleadings, three claims and two counterclaims were tried by a jury in August 2022. Judgment as a matter of law was entered as to some claims, and the jury rendered its verdict as to the other claims (Filing No. 331). Thereafter, the Court issued a Final Judgment closing the action (Filing No. 333). The pending Motions quickly followed. For the following reasons, the Court **grants in part** NNA's Bill of Costs, **grants in part and denies in part** NNA's Motion, and **denies** Coyle's Motions.

## I.     BACKGROUND

Coyle is an Indiana limited liability company that operates a car dealership in Clarksville, Indiana. NNA is a distributor of new Nissan motor vehicles and automotive products. On July 11, 2012, NNA and Coyle entered into a Nissan Dealer Sales and Service Agreement ("Agreement"). When the parties entered into the Agreement, Coyle's dealership facilities in Clarksville did not meet NNA's facility requirements, so NNA required Coyle to locate and acquire real estate approved by NNA for the construction of a new Nissan dealership Coyle was to build. The Agreement granted Coyle the right to operate from its existing facilities as a temporary location until permanent facilities could be established. The Agreement established a timeline for certain activities to be accomplished to transition from the temporary facilities to the approved permanent facilities. This required Coyle to identify a new dealership site that would meet NNA's facility requirements by September 1, 2013; acquire that site by March 1, 2014; commence facility construction by July 1, 2014; and complete construction of the new facilities and cease dealership operations at its temporary facilities by June 30, 2015.

The Agreement required Coyle to obtain NNA's approval and defined an "approvable site" as an "exclusive, separate and distinct (stand-alone)" NNA dealership facility of a size, appearance, and layout requiring NNA's approval. NNA called its facility guidelines the "Nissan Retail Environmental Design Initiative" or "NREDI." NNA promised Coyle a variety of incentives that would be available after Coyle built an NREDI-compliant facility.

During the ensuing months, Coyle identified locations for the dealership and went through the approval process to obtain NNA's approval. However, NNA rejected Coyle's proposals. Throughout the site search process, NNA offered and executed amendments to the Agreement with Coyle, extending the deadlines for Coyle to identify an approvable site; complete the acquisition

of the site by April 15, 2017; schedule and complete a design consult by May 1, 2017; submit final architectural plans for NNA's approval by July 1, 2017; and commence construction of the new facilities by October 1, 2017. If these conditions were met, the Agreement would be extended by eighteen months.

On April 20, 2017, more than three and a half years after Coyle first proposed it, NNA approved the originally proposed site for Coyle to build the new permanent facilities. It was the same site that NNA had twice rejected. Because NNA had not approved the site for more than three and a half years, Coyle had been operating out of the temporary facility that was inferior and in a location that was undesirable.

Based on the delays in the site approval process under the Agreement as well as Coyle's alleged exclusion from an incentive program, Coyle filed this lawsuit against NNA on May 2, 2018, and then amended its Complaint on January 2, 2019 (Filing No. 46), asserting claims for breach of contract (Count I), failure to bargain in good faith and deal fairly (Count II), violation of California law – covenant of good faith (Count III), breach of fiduciary duty (Count IV), violation of Indiana Code § 23-2-2.7-2(1)(iv) (Count V), violation of Indiana Code § 23-2-2.7-2(5) (Count VI), violation of Indiana Code § 9-32-13-8 (Count VII), violation of Indiana Code § 9-32-13-13 (Count VIII), violation of Indiana Code § 9-32-13-27 (Count IX), violation of 15 U.S.C. § 1221 (Count X), violation of the Robinson-Patman Act, 15 U.S.C. § 13(a) (Count XI), and declaratory judgment (Count XII). Each of the claims was based on Coyle's allegations that (1) NNA arbitrarily and unjustifiably, and without good business reason, rejected Coyle's proposals for the site of the permanent facilities only to, years later, approve the same location at a delay, injury, and loss to Coyle; and (2) NNA offered a selective incentive program only to certain preferred dealers and had not offered the incentive program to Coyle.

NNA moved to dismiss all of the claims except the breach of contract claim, and the Court granted in part and denied in part that motion (Filing No. 86). Counts II, IV, VII, VIII, and IX were dismissed. Counts I, III, V, VI, X, XI, and XII survived the motion to dismiss. NNA then moved for summary judgment on the remaining claims of the Amended Complaint.

Coyle's Amended Complaint was based upon the allegation that NNA wrongfully and unreasonably rejected several dealership sites proposed by Coyle beginning in 2012, and as noted above, on April 20, 2017, NNA finally approved a site for Coyle's dealership, which site had been originally and formally proposed by Coyle in September 2013. Then on February 13, 2021, almost three years after Coyle initiated this action and more than two years after Coyle filed the Amended Complaint, Coyle received a letter from NNA dated February 11, 2021, stating that NNA rescinded its approval of the dealership site and requested a written response outlining a new facility proposal and timeline. The rescission letter explained that the approved site had been substantially modified for use by a competing line-make, and, therefore, the facility plan could not be fulfilled. Coyle disputed NNA's assertion, explaining that only a small portion of the site has been paved with asphalt, and all of the land on the site remained available for use as the permanent location for a new Nissan facility.

Based upon NNA's February 2021 rescission of its approval of the dealership site, Coyle filed a Supplemental Complaint, alleging that the rescission constituted a new and separate breach of the parties' Agreement, was an additional violation of California's covenant of good faith and fair dealing, and was a violation of the Indiana Deceptive Franchise Practices Act (Filing No. 167-1). NNA filed its Answer to Coyle's Supplemental Complaint and also asserted two counterclaims—breach of contract and declaratory judgment—in response thereto (Filing No. 213). Thereafter, the Court granted NNA's motion for summary judgment on Coyle's remaining

4

claims from the Amended Complaint (Filing No. 212). Thus, all that remained for trial were Coyle's three causes of action asserted in the Supplemental Complaint and NNA's two counterclaims asserted in response thereto.

The claims and counterclaims were tried by a jury during a three-day trial in August 2022. Judgment as a matter of law under Rule 50 was entered against Coyle and in favor of NNA on Coyle's claim for violation of the Indiana Deceptive Franchise Practices Act. Judgment as a matter of law was entered against NNA and in favor of Coyle on NNA's counterclaim for declaratory judgment. The jury rendered its verdict against Coyle and in favor of NNA on Coyle's breach of contract claim and the claim for violation of California's covenant of good faith (Filing No. 331). The jury rendered its verdict on NNA's counterclaim for breach of contract as follows:

> Did Nissan North America do all of the significant things that Amendment No. 2 to the Nissan Dealer Sales and Service Agreement required it to do?
>
> "Yes"
>
> Did Coyle Nissan, LLC breach Amendment No. 2 to the Nissan Dealer Sales and Service Agreement by failing to do something that Amendment No. 2 to the Nissan Dealer Sales and Service Agreement required it to do, or by doing something that Amendment No. 2 prohibited it from doing?
>
> "Yes"
>
> Was Nissan North America harmed by Coyle's breach of contract?
>
> "No"

*Id.* at 4.

The Court then entered Final Judgment pursuant to Federal Rule of Civil Procedure 58 (Filing No. 333), and the parties promptly filed their post-trial Motions and the Bill of Costs.

## II. LEGAL STANDARDS

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54(d) creates "a strong presumption that the prevailing party will recover costs, with the ultimate decision resting within the district court's discretion." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined--the court must award costs unless it states good reasons for denying them." *Id.* Absent a showing of clear abuse of discretion, a district court's award of costs will not be overturned "[a]s long as there is statutory authority for allowing a particular item to be taxed as a cost." *Id.*

"Statutory authority exists for the award of costs in this case." *Cengr v. Fusibond Piping Sys.*, 135 F.3d 445, 454 (7th Cir. 1998). Under 28 U.S.C. § 1920, a federal court may tax as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. When awarding costs, district courts exercise discretion in determining whether the costs were reasonable and necessary to the litigation. *Cengr*, 135 F.3d at 453–54.

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

> Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence.

*Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citations and quotation marks omitted).

7

> Under Rule 50, both the district court and an appellate court must construe the facts strictly in favor of the party that prevailed at trial. Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence.

*Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (citations omitted). "Although the court reviews the entire record, the court 'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'" *Passananti*, 689 F.3d at 659 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)). If a Rule 50(a) motion for judgment as a matter of law is made at the close of evidence and is not granted, the moving party may renew the motion no later than twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b).

### III. DISCUSSION

Soon after the Court entered Final Judgment, NNA filed its Bill of Costs, requesting an award of costs as the prevailing party. The parties then promptly filed their competing Motions to Amend Final Judgment and Renewed Motions for Judgment as a Matter of Law. The Court will first address NNA's Bill of Costs and then turn to the parties' interrelated post-trial Motions.

**A.    NNA's Bill of Costs**

The Court entered Final Judgment after the jury trial in this matter concluded with a verdict. Two weeks later, as the prevailing party, NNA requested an award of its costs incurred in defending this action in the amount of $29,018.76 pursuant to Federal Rule of Civil Procedure 54(d)(1). The costs in the amount of $29,018.76 requested by NNA consist of: $931.00 for fees of the clerk; $847.00 for fees for service of summons and subpoena; $20,593.57 for fees for printed or electronically recorded transcripts necessarily obtained for use in the case; $4,032.06 for fees and disbursements for printing; $2,595.13 for fees for witnesses; and $20.00 for docket fees under 28 U.S.C. § 1923.

Pursuant to 28 U.S.C. § 1924, NNA submitted a sworn statement from its attorney attesting to the fact that these costs were reasonably, necessarily, and actually incurred in defending this action ([Filing No. 334](#)). NNA filed an itemization of the categories of incurred costs, providing additional detail regarding the costs ([Filing No. 334-2](#)). NNA additionally filed supporting receipts and invoices to evidence the costs incurred ([Filing No. 334-3](#); [Filing No. 334-4](#); [Filing No. 334-5](#); [Filing No. 334-6](#); [Filing No. 334-7](#)). Coyle did not file a response or objection to NNA's Bill of Costs.

In light of Rule 54(d)'s strong presumption that the prevailing party will recover costs, with no opposition filed by Coyle, each of the requested costs being statutorily authorized under 28 U.S.C. § 1920, and the Court determining that the costs were reasonable and necessary to the litigation, the Court concludes that NNA's requested Bill of Costs should be **granted in part**. NNA requested an award of $29,018.76 in total costs, and NNA submitted receipts and invoices to support each of the incurred expenses. However, there are no receipts or invoices for the following costs, so the Court reduces the award of costs by $5,962.51, the amount not supported by receipts or invoices: $231.00 for clerk admission fee for E. Livermore; $813.00 for deposition transcript of Sharif Farhat taken 11/13/2020; $819.90 for deposition transcript of Scott Compton taken 11/4/2020; $1,505.65 for deposition transcript of C. Coyle taken 12/9/2020; $1,037.40 for trial printing/demonstratives in evidence; and $1,555.56 for trial printing/demonstratives in evidence. The **Clerk is directed** to tax costs against Coyle in favor of NNA in the amount of **$23,056.25**.

**B.     Post-trial Motions**

Following the jury's verdict and the Court's entry of Final Judgment, the parties filed competing and interrelated Motions to Amend Final Judgment and Renewed Motions for Judgment as a Matter of Law.

>Pursuant to Rule 50(b),
>
>>NNA renews its motion for judgment as a matter of law directed to NNA's claim for breach of contract and moves to amend the judgment to delete the phrase "however the jury determined that Nissan North America was not harmed by Coyle's breach of contract." (Dkt. 333). In the Special Verdict Form, the jury found that NNA complied with its contract; and that Coyle Nissan, LLC ("Coyle") breached Amendment No. 2 to the Dealer Sales and Service Agreement ("DSSA"), but that the breach did not harm NNA. (Dkt. 331). That "no harm" finding is contrary to the undisputed evidence at trial that Coyle's failure to build its Nissan facility in accordance with the Amendment No. 2 (and instead build a parking lot for its Chevrolet dealership, and thus continue its operation from a construction trailer) harmed NNA's sales and brand image. Accordingly, NNA renews its motion for judgment as a matter of law upon its own claims at the close of all evidence and moves to amend the judgment to eliminate the jury's finding of "no harm."

([Filing No. 338 at 1](#)–2.)

>Further,
>
>>NNA also moves, pursuant to Rule 59(e), for the Court to amend the judgment by providing a declaratory judgment that, as the jury found, Coyle "breached Amendment No. 2 to the Nissan the Dealer Sales and Service Agreement." (Dkt. 331). The Court's dismissal of NNA's claim for declaratory judgment on the ground that it was "duplicative" of its breach of contract claim was a manifest error of law, where the declaratory judgment claim did not require a showing of "harm" and the claim was otherwise proper. Simply put, Coyle cannot have it both ways. It cannot maintain that the jury's finding of "no harm" dictates amendment of the judgment on the breach of contract count, and at the same time claim that the declaratory judgment count was "duplicative" of the breach of contract count where no showing of harm was required to establish the right to a declaration.

*Id.* at 2.

>Finally, to address the possibility that Coyle later challenges the judgment in favor of NNA upon *Coyle's* claims, NNA renews its motion for judgment as a matter of law, brought before the case was submitted to the jury, directed to Coyle's claims, and hereby incorporates by reference all grounds previously raised . . . .

*Id.*

NNA argues that the uncontroverted evidence at trial established that NNA was harmed by Coyle's breach of their dealership Agreement. While the precise monetary damage suffered by

NNA would be difficult to quantify, the evidence nonetheless established that NNA suffered harm in the form of damage to its brand and a negative impact on vehicle sales. NNA argues that during trial witnesses for Coyle and witnesses for NNA testified of damage to brand image and a negative impact on sales, and Coyle's counsel even admitted such. Thus, the evidence does not support the jury's verdict of "no harm," and judgment as a matter of law should be entered on NNA's breach of contract claim and Final Judgment amended accordingly.

NNA further argues that, even if there was no harm to support a breach of contract claim, declaratory judgment does not require harm,[1] and, thus, it is not duplicative of a claim for breach of contract, which does require harm. Therefore, it was erroneous for the Court to enter judgment as a matter of law based on Coyle's last minute oral argument on the basis of duplicative claims. NNA did not seek monetary damages at trial; rather, the only remedy it sought was a declaratory judgment that Coyle breached the Agreement, and, thus, the declaratory judgment claim was not duplicative of the breach of contract claim.

NNA asserts that its claim for declaratory judgment was proper, and it fully comported with the requirements of 28 U.S.C. § 2201. Importantly, a declaratory judgment that Coyle breached the Agreement has significance for future state administrative remedies and on-going contractual remedies. NNA argues that, based on the evidence at trial, declaratory judgment is appropriate in this case to declare that Coyle breached the Agreement, which is specifically what

---

[1] In fact, the Federal Declaratory Judgment Act allows the parties to seek relief before an injury occurs. District courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). . . . "As the Seventh Circuit has made clear, damage assessment is not required in declaratory judgment actions." *Biomet Inc. v. Tact Med. Instruments Inc.*, No. 3:01cv895, 2005 U.S. Dist. LEXIS 44737, at *21–22 (N.D. Ind. June 30, 2005) (citing *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 764–65 (7th Cir. 2003)).

(Filing No. 338 at 8–9.)

was found by the jury. The Court should amend the Final Judgment to include such a declaratory judgment.

Lastly, NNA asserts,

> Because NNA cannot predict whether and what challenges to the Court's judgment may be raised by Coyle in post-trial motions or on appeal as to Coyle's claims against NNA, and in order to ensure that it can raise, post-trial and in any appeal, all arguments and objections raised at trial as alternative grounds to affirm the judgment, NNA hereby renews its motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), stated at the close of Coyle's case in chief and again at the close of all evidence. NNA hereby incorporates by reference all arguments made before the Court and in NNA's motions in limine (Dkt. 238).

(Filing No. 338 at 14.)

For its part, Coyle asks the Court to amend the Final Judgment to reflect that the jury rendered its verdict in favor of Coyle rather than NNA on NNA's counterclaim for breach of contract. Coyle argues that, when the jury determined NNA had not been harmed by Coyle's breach, the jury returned its verdict in favor of Coyle as a matter of law because, "to support an action at law for breach of contract, the plaintiff must show it has suffered damage." *Emerald Bay Cmty. Assn. v. Golden Eagle Ins. Corp.*, 31 Cal. Rptr. 3d 43, 52 (Cal. Ct. App. 2005). And the party must prove nonspeculative damages with reasonable certainty. Therefore, the jury could not have rendered a verdict in favor of NNA on the breach of contract claim because the necessary element of harm was missing. Thus, Coyle argues, the Court must amend the Final Judgment to reflect that Coyle prevailed on NNA's breach of contract claim.

Coyle asserts that the jury's finding of "no harm" is the logical result of NNA failing to present any evidence of monetary or nominal damages, making no attempt to quantify any harm, and stating throughout trial that it was seeking only a declaratory judgment. NNA told the jury its goal was to send a message to Coyle.

Coyle makes these same arguments in support of its Rule 50(b) renewed Motion for Judgment as a Matter of Law. Coyle argues that because NNA did not present any evidence on the element of damages for its breach of contract claim, the jury determined that NNA was not harmed by Coyle's breach. Therefore, as a matter of law, Coyle prevailed on NNA's breach of contract claim, and judgment as a matter of law should be granted on that claim.

In its post-trial papers, Coyle acknowledges that declaratory judgment actions do not require a showing of damages or harm ([Filing No. 343 at 3](Filing No. 343 at 3)). However, Coyle argues that NNA made strategic litigation choices to not pursue damages during trial and instead focus on a declaratory judgment. Now that judgment as a matter of law has been entered on the declaratory judgment claim, and the jury has determined NNA suffered no harm from Coyle's breach, NNA cannot change its course; it is stuck with its litigation choices. It suffered no harm, and the declaratory judgment claim was duplicative of the breach of contract claim as the Court already determined.

Pursuant to the legal standard of Rule 50, the Court must construe the facts strictly in favor of NNA because it was the prevailing party at trial, and although the Court examines the evidence to determine whether the jury's verdict was based on that evidence, the Court does not make credibility determinations or weigh the evidence. The Court considers whether a reasonable jury would have a legally sufficient evidentiary basis to find for the party on that issue, and if that is lacking, then judgment as a matter of law is appropriate.

Each party asks the Court to enter judgment as a matter of law on NNA's breach of contract claim. Coyle argues the jury found no harm, and, thus, there is no breach of contract. NNA argues the jury found a breach of contract, and the evidence showed harm in the form of loss of goodwill and reputation and a lost opportunity for sales.

The evidence presented at trial supports the jury's verdict that Coyle did not do all that was required of it by the Agreement—thus, Coyle breached the contract. The jury was specifically asked, "Did Coyle Nissan, LLC do all of the significant things that Amendment No. 2 to the Nissan Dealer Sales and Service Agreement required it to do?" And the jury answered, "No." (Filing No. 331 at 1.) The jury also was specifically asked, "Did Coyle Nissan, LLC breach Amendment No. 2 to the Nissan Dealer Sales and Service Agreement by failing to do something that Amendment No. 2 to the Nissan Dealer Sales and Service Agreement required it to do, or by doing something that Amendment No. 2 prohibited it from doing?" And the jury answered, "Yes." *Id.* at 4. The evidence at trial was more than sufficient for a reasonable jury to reach these conclusions.

When asked, "[w]as Nissan North America harmed by Coyle's breach of contract," the jury answered, "No." *Id.* at 4. A reasonable jury could reach this conclusion in light of the evidence presented at trial because the parties did not come forward with evidence supporting monetary damages, they did not present quantifiable losses, and NNA explained that it was seeking a declaration of breach rather than damages. The parties did however elicit testimony that a loss of goodwill and customer base and lost sales opportunities occurred in this case. The Court will not speculate as to how the jury viewed this evidence, nor will the Court make credibility determinations or weigh the evidence on a Rule 50(b) motion. The Court determines that it is appropriate to leave the jury verdict undisturbed because it is supported by sufficient evidence, and the Court **denies** the parties' competing Renewed Motions for Judgment as a Matter of Law under Rule 50(b) on NNA's breach of contract claim. For these same reasons, the Court **denies** Coyle's Rule 59(e) Motion to Amend Final Judgment regarding NNA's breach of contract claim.

The Court briefly notes that NNA also requested judgment as a matter of law on Coyle's claims, upon which the jury rendered a verdict in favor of NNA. It appears that NNA is making

this request solely for the purpose of preserving arguments for appeal if necessary. Rule 50(b) states that, "[i]n ruling on the renewed motion, the court may . . . allow judgment on the verdict, if the jury returned a verdict . . . ." In light of the fact that the jury returned a verdict in favor of NNA on Coyle's claims, the Court declines NNA's request and, instead, allows judgment on the verdict on Coyle's claims.

Concerning NNA's Motion to Amend Final Judgment pursuant to Rule 59(e), NNA seeks to reinstate its claim for declaratory judgment because it was legally erroneous to dispose of the claim on the basis that it was duplicative of the breach of contract claim. Now, having a more robust explanation before it, the Court agrees with NNA and concludes that the declaratory judgment claim is not duplicative of the breach of contract claim, and it was erroneous to enter judgment as a matter of law on the sole basis of duplicative claims. While a breach of contract claim requires evidence of damage, Coyle acknowledges that declaratory judgment actions do not require a showing of damages or harm, and the statutory and case law provide for declaratory judgment actions without a showing of harm. Therefore, the Court **grants** NNA's request to amend the Final Judgment to reinstate the declaratory judgment counterclaim and declares, consistent with the jury's verdict, that Coyle breached Amendment No. 2 to the Nissan Dealer Sales and Service Agreement.

### IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Coyle's Motion to Amend Final Judgment (Filing No. 335) and Coyle's Renewed Motion for Judgment as a Matter of Law (Filing No. 336). The Court **GRANTS in part** NNA's Bill of Costs (Filing No. 334), and the **Clerk is directed** to tax costs against Coyle in favor of NNA in the amount of **$23,056.25**. Furthermore, the Court **GRANTS in part and DENIES in part** NNA's Motion to Amend Judgment and Renewed Motion

for Judgment as a Matter of Law ([Filing No. 337](#)). Judgment as a matter of law is denied, but the Court amends the Final Judgment to reinstate the declaratory judgment counterclaim and to declare that Coyle breached the parties' Agreement. An amended final judgment will issue under separate order.

**SO ORDERED.**

Date: 7/31/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Kirby A Black
Stoll Keenon Ogden PLLC
kirby.black@skofirm.com

Anna K. Boyle
DORSEY & WHITNEY LLP
boyle.anna@dorsey.com

Jennifer Coates
Dorsey & Whitney LLP
coates.jennifer@dorsey.com

Christopher Michael DeVito
Morganstern, MacAdams & DeVito Co.
ChrisMDeVito@gmail.com

Joseph H. Langerak, IV
Stoll Keenon Ogden PLLC
joe.langerak@skofirm.com

Evan Livermore
DORSEY & WHITNEY
livermore.evan@dorsey.com

Ronald C. Smith, I
Stoll Keenon Ogden PLLC
Ron.Smith@skofirm.com

William C. Wagner
TAFT STETTINIUS & HOLLISTER LLP
wwagner@taftlaw.com

Steven J. Wells
DORSEY & WHITNEY LLP
wells.steve@dorsey.com